JOHN FORD'S ADM'R v. CLEMENTS AND WIFE.

Where exceptions to the answers to interrogatories propounded to a party apply to all the answers, and are not well founded as to some, it is not error to overrule them entirely.

Where answers to interrogatories are excepted to on the ground that they contain matter not responsive, or pertinent under the statute, the objectionable parts of the answers should be designated by the exceptions.

A subsequent disability cannot be tacked to a disability existing at the time of the accrual of the cause of action.

Whether fraudulent concealment will in any case afford an exception to the running of the statute of limitations, from the accrual of the cause of action, *quere?* But if the exception were allowed, the fraudulent concealment and the time at which the fraud was or by reasonable diligence might have been discovered, must be strictly proved; and the statute would commence to run from that time.

Appeal from Walker. Action by the appellees Miranda Jane Clements, formerly Miranda Jane Oldham, and her husband, against John Ford, commenced July 21st, 1851, to compel the defendant to account for the value and hire of a certain woman slave named Narcissa and her increase.

Interrogatories were propounded by the defendant to the plaintiff, and the defendant excepted to the answers thereto "because they are not categorical, and because they contain much matter not required and not sought for by this defend-

ant and for other causes." Some of the answers at least were categorical.

The facts were as follows: Narcissa was the property of Tarpley Oldham, in Tennessee; Oldham died about the year 1824, leaving a widow and one child, the plaintiff, Miranda. On the 29th March, 1827, the widow of Oldham conveyed by deed duly recorded all her interest in said slave to her daughter Miranda. Shortly afterwards the widow married the defendant, Ford, and then Miranda and Narcissa became a part of his household; Miranda was then six or seven years of age; three or four years afterwards Ford and wife removed to Mississippi, carrying Miranda and Narcissa with them. In 1844 Miranda married one Eastwood. In 1845 Ford sold Narcissa her liberty and the liberty of one of her children. In 1848 Narcissa paid Eastwood $100 and his expenses to carry her and her children to Ohio. Eastwood died in the Fall of 1849, and Miranda married her present husband and removed to Texas. In her answer to the interrogatories propounded to her by the defendant, the plaintiff Miranda stated that "this defendant's title and right to said woman and children were concealed from her by the said defendant until he disclosed it on a bed of sickness sometime in the Spring of the year 1851," and that the defendant had previously represented to plaintiff Miranda, that she would be entitled to share equally with his six children by her mother, in the proceeds of the sale of Narcissa and her children at her mother's death. The value of the slave and her children, and of their hire was proved.

The Court charged the jury in substance, that if they found the facts as to the title as stated above, (leaving the statute of limitations and the fraud entirely out of view,) the plaintiffs were entitled to recover; that if Miranda was under 21 years when she married Eastwood, the statute of limitations would not bar her suit until two years after his decease; and that if Ford fraudulently concealed from Miranda her title to said slave, under such circumstances as would deprive her of the ordinary means of discovering said fraud and her title, the statute of

limitations would not commence to run until the discovery of the fraud and her title.

Verdict and judgment for the plaintiffs for $1,000. Motion for new trial overruled. It was assigned for error

1st. The overruling of defendant's exceptions to the answers of plaintiff Miranda to the interrogatories.

2d. The instructions of the Court to the jury.

*W. A. Leigh*, for appellant. I. The Court will observe that the reasons assigned in said exceptions why said answers should be stricken out and taken for confessed are that they are not categorical as is required by the statute, and because they contain much matter not sought for by interrogator. If these reasons be true, the answers ought to have been stricken out. That the Court may be convinced of their truth, read the answers to the interrogatories. Miranda Jane Clements was permitted by the Court below to prove fraud and every other requisite averment by her own aoth, although not interrogated in reference to them.

II. If there be any legal principle ever settled and established by the Supreme Court of this State, it is the reverse of that contained in the charges of the Court. (McDonald v. McGuire, 8 Tex. R. 361; Lewis v. Houston, 11 Tex. R. 642; see Angell on Limitation, 206–7; Mercer v. Selden, 1 How. U. S. R. 37.)

*A. P. Wiley*, for appellee. I. Is the plea of the statute of limitations available as a defence against a recovery under the facts in this case? It is thought not: 1st. Because cases of fraudulent concealment of title under such circumstances as would render a discovery of the fraud impracticable by the party defrauded, form an implied exception to the statute from the obvious policy of the statute itself; which in the language of Judge Story, was enacted mainly with a view to suppress fraud, and should not therefore be so construed as to become an instrument to encourage fraud if it admits of any other

reasonable interpretation; "cases of fraud therefore form an exception to be acted on by Courts of law and equity according to the nature of their respective jurisdictions." Such, says he, is the reason on which the exception is built, and not merely that there is an equity binding on the conscience of the party which the statute does not reach or control. (See Sherwood v. Sutton, 5 Mason, 163; Angell Lim. 195.) Now if there ever was a case in which fraudulent concealment could prevent the statute from operating until a discovery of the fraud, this is one; and in this respect it is far different in its facts from the case of Tinnen v. Mebane. (10 Tex. R. 250.) Here the evidence shows that at the date of the marriage of defendant Ford with her mother in Tennessee, that Miranda was a mere infant not exceeding four years of age; that she and her property after said marriage were taken charge of by him; that soon after his said marriage he removed with his family including Miranda and the slave Narcissa from the county where her title was recorded and her rights most likely to be known, into a different part of the State, and from thence into another and different State, and that at the date of his last removal she was only about nine years old; thus effectually cutting off all chances of discovery on the part of Miranda of her title to this property, except by the merest chance. If she, therefore, under these circumstances, remained in ignorance of her rights, it was not caused by any laches or want of diligence on her part, but solely by the acts of the defendant Ford, in placing her in such a position that all the ordinary sources of information were wholly inaccessible to her. But the fact of concealment of her title is not alone to be inferred from the acts and movements of the defendant Ford as above detailed. The evidence is express and positive that about the time he sold Narcissa and her two children in 1845, that he represented to the complainant Miranda that his own children were equally interested with her in this property at her mother's death; and the evidence further shows that it was not until the year 1851 that the goadings of a guilty conscience

compelled him to disclose to her on a bed of sickness the true facts of the case and her title to the property.

The Supreme Court of Georgia in the late case of Persons v. Jones, 13 Geo. R. 371, in deciding that cases of fraud form an implied exception to the statute of limitations both at law and in equity, use this remarkable language, "that in affirm-"ing then the judgment of the Circuit Court upon this ground, "it is a consolation to know that if we err, it is in company "with Mansfield, Parsons and Story, and on the side of "right." And they might also have added the illustrious Chancellor Kent. (See Kane v. Youngblood, 7 Johns. Chan. R. 121-2; Angell on Lim. 186 to 202; Id. 512, note.)

II. In support of the ruling of the Court below on the answers to interrogatories, it may be observed that the exceptions are general and apply to the entire answer, and do not point out specifically the objectionable parts, so that if any parts of the answer are admissible, then the exceptions to the whole answer were not well taken, and should have been overruled. (See Hart. Dig. Art. 737; 10 Ala. R. 453; 13 Id. 588.)

LIPSCOMB, J. The objection taken to the answers of the plaintiff below to interrogatories filed by the defendant was very properly overruled. The objection was too general; the exception should always be specific, in showing the grounds of the exception.

The second ground of error is more important. The suit was brought to recover slaves. The right of action must have accrued in 1827 or 1828, when the plaintiff was an infant, and this suit was brought 21st February, A. D. 1851. The petitioner alleges that the plaintiff, Mrs. Clements, intermarried with one Eastwood in February, 1844, and that she was then a minor. From the facts stated in the petition, Mrs. Clements must have been born as early as 1824, if not earlier than that. She must have been twenty-one years of age the first of the year 1845. The suit was then barred before the

commencement of the action, unless some exception to the statute of limitations can be shown, to sustain the action. The fact of her being a *feme covert* when she arrived at the age of twenty-one, is not a legal ground of exception, because her right of action accrued during her infancy, and infancy was therefore the impediment to the running of the statute, when her right accrued. When this impediment was removed by arriving at the age of majority, no other disability to the running of the statute could be tacked on to the impediment to the statute running when the right of action accrued. The statute commenced running on her arriving at the age of twenty-one, and the death of Eastwood and her subsequent marriage to Clements did not stop its running. This question was discussed and decided by this Court in the case of White and wife v. Latimer, (12 Tex. R. 61.)

The appellee's counsel seems mainly to rely on another exception to the statute running, that is, the fraudulent concealment of the appellee's rights from her by the appellant's intestate, and that this suit was brought within the time prescribed by the statute, after the discovery of the fraud. This Court has never decided the question whether fraud or any thing else, not mentioned as exceptions to the statute, could be received to avoid the bar of the statute; and perhaps there would be some diversity of opinion on the subject. In the case of McDonald v. McGuire (8 Tex. R. 361,) this Court declined, deciding whether this defence could be set up to the statute or not, because from the circumstances of that case it was not necessary to rest it on that point; but after commenting on the difficulty and danger of permitting such defence, the following language is used: As a safeguard, then, to the "defendant, if the exception of fraudulent concealment be al-"lowed at all, it should be strictly and clearly proven, and "also the time at which the fraud was or by reasonable dili-"gence might have been discovered," (p. 370-71.) The application of the rule here laid down, would result in this, that as the plaintiff's right was a matter of record as early as 1827

or 1828, diligence would have informed her of her right. The case would have to be one of very extraordinary features, in which it would be ruled, that a party had been fraudulently kept ignorant of a right so supported by record evidence. In fact, it would be impairing one great object of record evidence of rights secured by deeds to permit such evidence to be resorted to in any case. The object of the record is notice to the world, of the right secured. We believe that no sufficient excuse is shown why the suit was not sooner brought; that if there was a want of notice of right concealed as alleged, the use of due diligence could have defeated the fraudulent intent. (See Tinnen v. Mebane, 10 Tex. R. 255.) Nor is it satisfactorily made out that there was any fraudulent intent. Is it not a more charitable conclusion that Ford was acting, though wrong as to the title of the property, yet with honest intent and through ignorance, than to suppose that Mrs. Clements, by ordindary diligence, could not have known of her rights sooner? The judgment is reversed and the cause remanded.

Reversed and remanded.