NO.
12-06-00395-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

WILLIAM T. OTT,    §                      APPEAL FROM THE 

APPELLANT

 

V.        §                      COUNTY COURT AT LAW #2

 

JOHN W. DIMOND, IV AND
JACK

DIMOND LINCOLN-MERCURY,
INC.,

APPELLEES §                      GREGG
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            William T.
Ott appeals the trial court’s summary judgment in favor of John W. Dimond, IV
(John Dimond) and Jack Dimond Lincoln-Mercury, Inc. (Dimond Lincoln-Mercury) in
Ott’s suit for tortious interference and breach of an employment contract.  Ott raises two issues on appeal regarding the
validity of the contract and John Dimond’s authority to act.  We affirm.

 

Background








            John
W. Dimond, III (Jack Dimond), the father of John Dimond, was president of
Dimond Lincoln-Mercury, which has dealerships in Longview and Tyler.  Jack Dimond worried that his son’s management
style would hurt the company and in May 2004 terminated John Dimond from his
position as vice president of Jack Dimond Lincoln-Mercury, Inc.  Jack Dimond wanted Ott, sales manager of the
Longview dealership, rather than his son, to run the Longview dealership. Thus,
Jack Dimond prepared a document between Dimond Lincoln-Mercury and Ott
providing that the dealer would employ Ott for a term of twenty-five
years.  The document was signed by Jack
Dimond, as president of Dimond Lincoln-Mercury, and by Ott on June 15,
2004.  In August 2004, John Dimond was
terminated from his employment with the dealership.

            Jack
Dimond died in early September 2004.  At
the death of his father, John Dimond and his half-brother, Charles Wright, each
inherited 25% of the stock in Dimond Lincoln-Mercury through the Doris Dimond
Testamentary Trust, a trust set up by their deceased mother that by its terms
terminated upon the death of Jack Dimond. 
John Dimond and Charles Wright then called a shareholders’ meeting with notice
to all shareholders.  At the shareholders’
meeting, John Dimond was elected president of Dimond Lincoln-Mercury.  Shortly thereafter, on December 2, 2004, Ott
was terminated.

            Ott
brought suit against Dimond Lincoln-Mercury for breach of contract and against
John  Dimond for tortious interference
with the contract.  Dimond
Lincoln-Mercury and John Dimond then filed a combined traditional and no
evidence motion for summary judgment under Rule 166a(c) and Rule 166a(i) of the
rules of civil procedure arguing entitlement to judgment due to failure of
consideration and because John Dimond was not a stranger to the contract.  Ott filed his response to the motion, and the
motion was heard by the trial court. 
After the hearing, Ott amended his petition to assert a claim of
promissory estoppel in addition to his previously asserted claims.  Without specifying the reason for its ruling,
the trial court granted the motion for summary judgment and signed a take
nothing final judgment against Ott and in favor of Dimond Lincoln-Mercury and
John Dimond.  The judgment specifically
stated that it disposed of all claims and causes of action.  This appeal followed. 

 

Standard of
Review








            The
movant for traditional summary judgment has the burden of showing that there is
no genuine issue of material fact and that it is entitled to judgment as a
matter of law.  Tex. R. Civ. P. 166a(c); Nixon v.
Mr. Property Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  The movant must either negate at least one
essential element of the nonmovant's cause of action or prove all essential
elements of an affirmative defense.  See
Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644
(Tex. 1995).  Once the movant has
established a right to summary judgment, the nonmovant has the burden to
respond to the motion for summary judgment and present to the trial court any
issues that would preclude summary judgment. 
See City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678-79 (Tex. 1979).   

             After an adequate time for discovery has
passed, a party without the burden of proof at trial may move for summary
judgment on the ground that the nonmoving party lacks supporting evidence for
one or more essential elements of its claim. 
Tex. R. Civ. P. 166a(i).  Once a no evidence motion has been filed in
accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth
evidence that raises a fact issue on the challenged evidence.  See Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 600 (Tex. 2004).  We
review a no evidence motion for summary judgment under the same legal
sufficiency standards as a directed verdict. 
King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex.
2003).  A no evidence motion is properly
granted if the nonmovant fails to bring forth more than a scintilla of
probative evidence to raise a genuine issue of material fact as to an essential
element of the nonmovant’s claim on which the nonmovant would have the burden
of proof at trial.  Id. at
751.  If the evidence supporting a
finding rises to a level that would enable reasonable, fair minded persons to
differ in their conclusions, then more than a scintilla of evidence
exists.  Id.  Less than a scintilla of evidence exists when
the evidence is so weak as to do no more than create a mere surmise or
suspicion of a fact, and the legal effect is that there is no evidence.  Id.

            In
both traditional and no evidence summary judgment motions, we review de novo
the entire record in the light most favorable to the nonmovant, indulging every
reasonable inference and resolving any doubts against the motion.  Sudan v. Sudan, 199 S.W.3d 291,
292 (Tex. 2006); KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,
988 S.W.2d 746, 748 (Tex. 1999).  If the
trial court’s order does not specify the grounds on which it granted summary
judgment, we affirm the trial court’s ruling if any of the theories advanced in
the motion is meritorious.  State
Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993).  When a party moves for both a traditional and
a no evidence summary judgment, we first review the trial court’s summary
judgment under the no evidence standards of Rule 166a(i).  Ridgway, 135 S.W.3d at
600.  If the no evidence summary judgment
was properly granted, we do not reach arguments under the traditional motion
for summary judgment. See id. at 602. 

 

Breach of
Contract

            In
his second issue, Ott asserts that the trial court erred in granting summary
judgment as to his breach of contract claim. 
He argues that there was consideration for his agreement with Jack
Dimond because Jack Dimond had valid business reasons for entering into a long
term employment contract with Ott.  He
further argues that the statute of frauds does not bar enforcement of the
employment agreement and the contract is enforceable under the unilateral
contract rule.

            In
their motion for summary judgment, John Dimond and Dimond Lincoln-Mercury
asserted entitlement to judgment as a matter of law on Ott’s breach of contract
claim because the contract fails for lack of consideration.  They asserted that the contract did not identify
the consideration to be provided by Ott in exchange for the dealer’s promise of
twenty five years of employment.  They
argued that this is a violation of the statute of frauds, which requires all
essential terms to be in the written document, and that it resulted in an
unenforceable document because the agreement lacks mutuality of obligation.

            Ott
filed a response, asserting that there are issues of material fact on the
element of consideration.  He relied on
several exhibits including his affidavit, his deposition testimony, deposition
testimony of the dealership’s CEO, Charles Hilton, and the contract he and Jack
Dimond signed.

            Texas
follows the employment at will doctrine, and employment for an indefinite term
may be terminated at will and without cause. 
Williams v. First Tenn. Nat’l Corp., 97 S.W.3d 798, 802-03
(Tex. App.–Dallas 2003, no pet.).  Absent
a specific contract term to the contrary, this doctrine allows an employee to
quit or be terminated without liability on the part of the employer or the
employee, with or without cause.  Id.
at 803.  A discharged employee who
asserts that the parties have contractually agreed to limit the employer’s
right to terminate the employee at will has the burden of proving an express
agreement or written representation to that effect.  Id.

            The
elements of a breach of contract claim are (1) the existence of a valid
contract, (2) performance or tendered performance by the plaintiff, (3) breach
of the contract by the defendant, and (4) damages caused by the breach.  Roof Sys., Inc. v. Johns Manville Corp.,
130 S.W.3d 430, 442 (Tex. App.–Houston [14th Dist.] 2004, no pet.).  For a contract to be enforceable if it is not
to be performed within one year from the date it is made, the contract must be
in writing and signed by the person to be charged with the promise or agreement
or by someone lawfully authorized to sign for him.  Tex. Bus. & Com. Code
Ann. § 26.01(a), (b)(6) (Vernon Supp. 2007).  The writing must be “complete within itself
in every material detail” and contain “all of the essential elements of the
agreement, so that the contract can be ascertained from the writings without
resorting to oral testimony.”  Cohen
v. McCutchin, 565 S.W.2d 230, 232 (Tex. 1978).

            It
is a fundamental rule of the law of contracts that every contract must be
supported by consideration.  Stone
v. Morrison & Powers, 298 S.W. 538, 539 (Tex. Comm’n App. 1927,
holding approved).  Consideration may
consist of some right, interest, profit, or benefit that accrues to one party,
or, alternatively, of some forbearance, loss, or responsibility that is
undertaken or incurred by the other party. 
In re C & H News Co., 133 S.W.3d 642, 647 (Tex. App.–Corpus
Christi 2003, orig. proceeding).  

            Application
of the consideration requirement depends in part on the nature of the
contract.  A bilateral contract is one in
which there are mutual promises between two parties to the contract, each being
both a promisor and a promisee.  Hutchings
v. Slemons, 141 Tex. 448, 452, 174 S.W.2d 487, 489 (Tex. 1943).  Thus, valid consideration for a bilateral
contract involves mutuality of obligation. 
In re Palm Harbor Homes, Inc., 129 S.W.3d 636, 643 (Tex.
App.–Houston [1st Dist.] 2003, orig. proceeding). 

            In
contrast, a unilateral contract has only one promisor and is completed by the
promisee’s performing the act or acts called for, rather than by the promisee’s
making any reciprocal promise or promises. 
Herschbach v. City of Corpus Christi, 883 S.W.2d 720, 733
(Tex. App.–Corpus Christi 1994, writ denied). 
One party furnishes no consideration of value to the other party and
does not obligate itself to do anything that may result in injury to itself, or
a benefit to the opposite party.  Id.  Because there is no promise on the part of
the promisee, there can be no mutual obligations.  May v. Lee, 28 S.W.2d 202,
204-05 (Tex. Civ. App.–Galveston 1930, no writ).  Mutuality of obligation is inapplicable to a
unilateral contract.  Pace Corp. v.
Jackson, 155 Tex. 179, 184, 284 S.W.2d 340, 344 (1955). 

            Enforceable
contracts can be made between an employer and employee when one or both retains
the option to discontinue employment at any time, but only so long as neither
party relies on continued employment as consideration for the contract.  J.M. Davidson, Inc. v. Webster,
128 S.W.3d 223, 228 (Tex. 2003).  When
either an employer or an employee retains the option of discontinuing
employment in lieu of performance, that promise is illusory.  Light v. Centel Cellular Co. of Tex.,
883 S.W.2d 642, 645 (Tex. 1994).  An
illusory promise is not consideration.  Id.
at 644-45.  However, if only one promise
is illusory, a unilateral contract can still be formed.  Alex Sheshunoff Mgmt. Servs. v. Johnson,
209 S.W.3d 644, 650 (Tex. 2006).  In such
a situation, the nonillusory promise is an offer that the promisor who made the
illusory promise can accept by performance. 
Id. 

            The
“Agreement Regarding Employment” provides:

 

1.             It is
agreed that Employee shall continue to be employed by the Employer in the
capacity as Sales Manager and that the Employee’s compensation will continue
under the present structure and arrangement, subject to future adjustments by
decision of the Board of Directors of the Employer.

 

2.             The
Employee’s employment with the Employer shall continue for a period of
twenty-five (25) years from the date of this Agreement, unless earlier
terminated at the election of the Employee, by mutual agreement of the parties,
or by the Employer for “good cause”. [sic]

 

 

The document was signed by John W.
Dimond, III as President of Jack Dimond Lincoln Mercury, Inc. and by Ott.

            Ott
was sales manager for Dimond Lincoln-Mercury from 1989 to 1993 and again from
2001 until his termination on December 2, 2004. 
It is not contested that, prior to June 15, 2004, Ott was an at will
employee.  John Dimond and the dealership
argue that Ott’s continued employment cannot constitute consideration.  We agree.

            Ott
presented as summary judgment evidence the agreement he and Jack Dimond
signed.  Pursuant to that agreement, Jack
Dimond, as president of Dimond Lincoln-Mercury, promised Ott continued
employment for twenty-five years except that he could be terminated for “good
cause.” 

            Based
on the terms of the contract, both Jack Dimond and Ott relied on Ott’s
continued employment as consideration for the contract.  Dimond relied on Ott’s promise to continue
working at the dealership and Ott relied on Jack Dimond’s promise that the
dealership would employ him for twenty–five years.  However, continued employment is insufficient
consideration for a contract between an at will employer and employee.  See J.M. Davidson, 128 S.W.3d
at 228.

            Although
the contract states Ott can be terminated before the end of twenty–five years
for “good cause,” the parties did not specify what would constitute “good
cause.”  Because the written contract
does not include an agreement about what “good cause” would encompass, the
contract does not limit the dealership’s right to terminate Ott at will.  See Montgomery County Hosp. Dist. v.
Brown, 965 S.W.2d 501, 502 (Tex. 1998). 
Therefore, Jack Dimond’s promise is illusory and fails as
consideration.  See Light,
883 S.W.2d at 644-45.  The contract
clearly states that Ott had the right to terminate his employment at any time
and he made no promises other than that he will continue to work for the
dealership.  Consequently, Ott’s promise
to continue working was also illusory.  See
id.  No valid bilateral
contract exists because there is no mutuality of obligation.  See In re Palm Harbor Homes,
129 S.W.3d at 643.  Further, because at
least one nonillusory promise is necessary to form a unilateral contract, the
employment contract is not a unilateral contract.  See Alex Sheshunoff Mgmt. Servs.,
209 S.W.3d at 650; J.M. Davidson, 128 S.W.3d at 228.

            Finally,
even if we assume that no contractual definition of “good cause” was required,
making Jack Dimond’s promise nonillusory, the result would not change.  Because Ott made no other promises and had
the right to terminate his employment at any time, Jack Dimond relied only on
Ott’s continued employment as consideration for the agreement.  See J.M. Davidson, 128 S.W.3d
at 228.  Thus, Ott’s act of continuing to
work for the dealership was not sufficient to constitute acceptance of Jack
Dimond’s offer of a unilateral contract. 
See Alex Sheshunoff Mgmt. Servs., 209 S.W.3d at 650; J.M.
Davidson, 128 S.W.3d at 228. 

            The
summary judgment evidence shows that John Dimond and the dealership
conclusively negated the element of consideration.  See Johnson, 891 S.W.2d at
644.  Therefore, the trial court did not
err by granting summary judgment on Ott’s breach of contract claim.  See Tex.
R. Civ. P. 166a(i).  We overrule
Ott’s second issue.

 

Tortious
Interference with the Contract

            In his first
issue, Ott contends that the trial court erred in granting summary judgment as
to his tortious interference claim.  He
argues that John Dimond had no authority to act 
on behalf of the dealership when he terminated Ott and the termination
was based on personal motives.

            Ott does not
dispute that the acts of a corporate officer on the corporation’s behalf are
deemed corporate acts rather than individual acts.  Instead, he argues first that John Dimond was
not a proper corporate officer of Dimond Lincoln-Mercury, and second that John
Dimond acted solely on personal interests rather than in furtherance of the
corporation.

            With regard
to his claim that John Dimond was not a proper corporate officer of Dimond
Lincoln-Mercury, Ott initially argued that John Dimond did not inherit the 25%
ownership interest in Dimond Lincoln-Mercury until the Doris Dimond
Testamentary Trust was modified in a court proceeding in February 2005.  But in Ott’s reply brief, he acknowledges
that John Dimond actually inherited the 25% ownership interest at the time of
his father’s death in September 2005. 
Because the Doris Dimond Testamentary Trust expressly terminated at the
death of Jack Dimond, John Dimond’s 25% ownership in Dimond Lincoln-Mercury
vested immediately upon the death of Jack Dimond.  See Tex.
Prop. Code Ann. § 112.052 (Vernon 2007) (Rights vest in the
beneficiaries of a trust, and the trust terminates if by the terms of the trust
it is to continue only until the happening of a certain event and the event has
occurred.).  Thus, John Dimond owned a
portion of Dimond Lincoln-Mercury before Ott was terminated.  Further, we note that John Dimond, after his
father’s death but before Ott’s termination, was voted president of Dimond
Lincoln-Mercury at a shareholders’ meeting. 
Accordingly, John Dimond was a corporate officer of Dimond
Lincoln-Mercury entitled to act on the corporation’s behalf prior to Ott’s
termination.  

            To establish
tortious interference with a contract, a plaintiff must prove (1) the existence
of a contract subject to interference, (2) a willful and intentional act of
interference (3) that was a proximate cause of damage, and (4) actual
damage.  Holloway v. Skinner,
898 S.W.2d 793, 795-96 (Tex. 1995). 
Third persons are not free to tortiously interfere with the performance
of a contract for a term or one that is terminable at will.  See Sterner v. Marathon Oil Co.,
767 S.W.2d 686, 689 (Tex. 1989).  The
acts of a corporate agent on behalf of the corporation generally are deemed to
be the corporation’s acts.  Latch
v. Gratty, Inc., 107 S.W.3d 543, 545 (Tex. 2003).  Thus, when the defendant serves dual roles of
corporate agent and third party who allegedly induces the corporation’s breach,
the second element is of particular importance. 
Holloway, 898 S.W.2d at 796.  Under such circumstances, “the alleged act of
interference must be performed in furtherance of the defendant’s personal
interests so as to preserve the logically necessary rule that a party cannot
tortiously interfere with its own contract.” 
Id.  To meet its
burden, the plaintiff must show that the defendant’s act of interference was so
contrary to the corporation’s best interests that his actions could be
motivated only by personal interests.  Id.  “It is immaterial that the actor also profits
by the [act] or that he dislikes that third party and takes pleasure in the
harm caused to him by the [act].”  Id.  However, the actor cannot be held to have
acted against the corporation’s interests unless the corporation has objected.  Latch, 107 S.W.3d at 545.

            Here, Dimond
Lincoln-Mercury did not object to the actions of John Dimond.  Ott concedes this point but argues that “the
unusual circumstances presented” dictate that we should not apply the “no
complaint” principle in this case.  We
decline Ott’s invitation to ignore Texas Supreme Court precedent.

            Without
evidence that Dimond Lincoln-Mercury objected to the action of John Dimond, Ott
cannot show that Dimond’s actions were against Dimond Lincoln-Mercury’s
interests.  See id.  Thus, Ott did not bring forth summary
judgment evidence raising a genuine issue of material fact as to whether John
Dimond performed a willful and intentional act of interference.  Therefore, John Dimond could not be liable to
Ott for tortious interference with contract as a matter of law, and the trial
court properly granted summary judgment on that claim.  See Tex.
R. Civ. P. 166a(i).  We overrule
Ott’s first issue. 

 

Disposition

            Because
Dimond Lincoln-Mercury and John Dimond negated one element of Ott’s breach of
contract claim and because John Dimond could not as a matter of law be liable
to Ott for tortious interference with contract, Dimond Lincoln-Mercury and John
Dimond are entitled to summary judgment. 
We affirm the trial court’s judgment.

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

 

Opinion delivered February
22, 2008.

Panel consisted of Worthen,
C.J., Griffith, J., and Hoyle, J.

 

 

 

(PUBLISH)